Pro Se
James Epperson
108 Jamie Drive
Maryville, TN 37804

FILED

2019 AUG 12 P 3:39

U.S. DISTRICT COURT
EASTERN DIST. TENN.

_____ DEPT. CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

James Epperson,            )
                           )   3:19-cv-307
         Plaintiff,        )   McDonough/Poplin
                           )
Vs.                        )
                           )
Consolidated Nuclear Security, LLC (CNS)  )
Oak Ridge, TN 37831-9986   )
                           )
         Defendant,        )
_____)

Plaintiff James Epperson brings forth the following causes of action and alleges the following:

1. Plaintiff is an individual and resident of Blount County, TN.
2. The defendant is a corporation and at the time of this complaint, a resident of Oak Ridge, TN.
3. On August 16th, 2018, plaintiff was exposed along with another individual to the reckless behavior of an incompetent operator that flew a critical load over the heads of these two carpenters.
4. On August 20th, 2018, plaintiff was summons to the office of Human Resources where plaintiff plead his case with accompanying ANSI procedures from the 2002 edition of the Bechtel Corporation handbook (3 pages). This was left along with the plaintiff's requested Y-12 site access badge.
5. On September 19th, 2018, via phone conversation with Ms. Stefanie Richards, plaintiff blew the whistle on this operator's destructive behavior and made note of three other

carpenters' same experience that foreshadowed this nightmare put on the plaintiff. At this time, plaintiff was told he could be brought back to the UPF at Y-12 in six months, which was a lie to facilitate plaintiff from not filing through the grievance process. Furthermore, this instance and the instance outlined in section four were both blatantly done to conceal any wrongdoing on CNS's part to cover up the six-inch bolt incident that happened in July 2018 that prompted a congressional investigation after falling from the top of one of the two 300 foot cranes there.

6. In waiting for the "six month return to work" and once after that timeline, a coordinated effort was made orchestrated between CNS and the plaintiff's union local to have the plaintiff fired (for the first time in his life-as this was labeled "discharged") and make plaintiff appear as a sorry worker. Plaintiff has proof of everything thus far stated.
7. Plaintiff prays for relief in this litigation of whistleblower/retaliation case.
8. Enclosed is the letter dated June 15th, 2019 to be presented as evidence to the court. Any correspondence between defendant and plaintiff (since at this time of filing plaintiff is pro se until economics can facilitate retainment of the attorney plaintiff has chosen) can be done via fax (865-233-0416)or by mail at the address on top of this document.

Dated this 11th day of August 2019

*James Epperson*

James Epperson (pro se)

James Epperson
108 Jamie Drive
Maryville, TN 37804

15th June 2019

**Tonya Leach**
Cc: John R. Arbough, Stefanie Richards
Employment Services and Recruiting
Consolidated Nuclear Security, LLC (CNS)
Staffing Office
Mail Stop 8018
P.O. Box 2009
Oak Ridge, TN 37831-9986


Dear Ms. Leach, John R. Arbough, Stefanie Richards

    It has been a long time since I contacted you on October 11th, 2018 whereby I was seeking, in writing, the missing six-month deal Stefanie Richards proposed to me. I never heard back from you in that regard as I obtained just that through other channels.

    Now, ten months later from my termination, I am at a crossroads of running out of time for the one-year deadline allowed to me by law to change the outcome of this nightmare that was thrust upon me. The six-month deal apparently had a benign purpose in deflecting me from the time allowance for the grievance process, which it succeeded in doing just that.

    Now, it has come to this: after consulting with eleven attorneys, of which none said I did not have a case, I have narrowed it down to three willing to take my case. These attorneys were local and out of the area because of the deep ties that CNS and namely this 6.5 billion dollar UPF job has on our immediate area. The magnitude of CNS's wrongdoing involving this dilemma is two-fold. First of all, Stefanie Richards had no intent in her nine-minute and fifty-six second conversation with me on September 19th, 2018 of ever bringing me back six months from my "discharge," nor what she eluded in writing have any legal precedence- because that is a matter of ethics, and you might have been able to sway a jury or judge in that venue. However, secondly, on August 20th, 2018 as witnessed by John R. Arbough, Kenny

Cox, my carpenter foreman, the foreman over all other carpenter foremen, our newly appointed steward, and Ms. Stefanie Richards on speaker phone, I went on for a long time about other instances by this operator that replicated my dilemma as well, whereby I asked a question: "What is it going to take, someone to get killed before you stop the negligent behavior of that operator?" Furthermore, I gave a copy of p. 1-3 from VER 2.12.02 section 1.3.1 Responsibilities that I personally highlighted from the Bechtel Corporation interpretation handbook 2002 edition which I presented to Kenny Cox and John Arbough.

Repetitiously, on September 19th, 2018, I blew the whistle on this destructive behavior in noncompliance of that operator of which I was stifled by Ms. Richards after I newly brought to light three specific instances of three different carpenters had the same deja vu experience of this same operator flying critical loads directly over them (where Ms. Richards denied any knowledge of any such occurrences). That is where CNS made a decision that was wrong. Their reasoning, as I had postulated to Ms. Richards, was the six-inch bolt incident that fell 300 feet from one of the cranes, which prompted the congressional investigation three weeks prior, yet miraculously did not allow OSHA to shut down the biggest federal job in the history of Tennessee. That was my speculative reasoning behind CNS's callous handling of me i.e. to keep this out of the public's view via media.

I am proposing pro se, ten months out an alternative in lieu of an impending legal suit that I will begin with the help of the attorney I have chosen on you, CNS, which you have given me no other choice to resort to. This once in a lifetime opportunity for steady employment for the next seven years at the UPF, and then two years in "hot work" dismantling the existing facilities is something rare here in East Tennessee. In fact, at fifty-nine years of age, I planned to retire from the DOE site that I am restricted from. This impact has been felt hard by myself and seventeen-year-old daughter that I have raised on my own for ten years, Jadynn Epperson (who planned with her 3.9 GPA but not quite high enough ACT score for a scholarship to attend UTK). This loss constitutes eight categories of reparations that I feel owed and will use the court system if need be to facilitate. They are as follows:

1.) 9 years Y-12 at 60 hours/week = 70 hours hours/week (time and a half after 40 hours), $26/hour x 70 hours/week x 52 weeks/year x 9 years = $851,760

2.) Wage increase every two years by $2 per hour: $2/hour x 60 hours x 52 hours/week x 2 years = $12,480, $4 x 60 x 52 x 2 = $24,960, $6 x 60 x 52 x 2 = $37,440, $8 x 60 x 52 x 2 = $49,920, total = $124,800

3.) Insurance Cobra pay: $585 x 12 months x 9 years = $63,180

4.) Annuity: $1/hour, 60 hours/week x $1/hour x 52 weeks x 9 years = $28,080

5.) Retirement credits lost: 9 credits at $65/month x 20 years x 12 months/year = $140,400

6.) Employer paid benefits per hour = $6.12 x 60 hours/week x 52 weeks x 9 years = $171,849.6, gross total for items 1-6 = $1,380,069

7.) Tax to pay out: 23% = gross total x 1.23 = $1,697,485

8.) My work career started at age eight raising tobacco until I was sixteen, which was over fifty years ago and this was a first for being fired or "discharged" as you put it. Next calculation is for orchestrated attempts of defamation of character that I have experienced since the October 11th, 2018 certified letter I sent to you and can prove on three of four occasions (of which the fourth was nipped in the bud before it even became a constituent). Make note if any more of this happens the T.B.I. will be getting involved. Therefore, this figure of $1,697,485 is multiplied times three, which comes to $5,092,455.

This figure ($5,092,455), I will file suit for after July 16th, 2019- 30 days from the date of this letter will be divided in half if done pro se during this 30 day period, which comes out to be $2,546,227. I reserve the right at this time to request that any evidence, including camera footage, be saved should you decide to not go through with this proposal. Furthermore, I request that if additional costs incur (should you elect to not take me seriously and go forward taking a chance that the wrongdoing you have done to me and my daughter should within this 30 days be corrected e.g. attorney fees and Federal Court costs), that it is understood hereby, that this increase could be relevant to this cause. With the Tennessee Legislature in limbo as to the constitutionality of the one million dollar cap. on this type of employment law case (whistleblower/retaliation), if delegitimizing my out of court, Pro Se settlement seems unjustifiable at least the mannerisms you employed against me to keep this out of the public spotlight will have succeeded in that respect. Should you see the sense and practicality due to loss of time and money that

we both would endure through depositions, court appearances, subpoenas, with accompanying embarrassments to some sequestered in this matter- the choice is yours. I do not want anyone telephoning, harassing, or trying to inadvertently communicate with me or anyone associated with me concerning this proposal. The method of payment which will be an acceptance of this settlement can be in the form of a check or as a deposit into the three accounts that I had set up with CNS lump sums each whereby I had $100/week deposited before I was "discharged" x 52 weeks x 9 years and that comes $46,800 which was my daughter's joint Y-12FCU account ending in 1380. The second account, which was the Y-12FCU account that I opened in 1993 when employed there, at Y-12, that ends in 5312 was getting $120/week x 52 weeks x 9 years which totals $56,160. The grand total for these two accounts is $102,960. The amount I am willing to settle for, $2,546,227 subtracted from $102,960 is $2,443,267 of which I would want to be deposited into my former Capital Bank account ending in 1803 which is what I gave you but has been turned into a First Tennessee account that ends in 8661 (but if deposited into Capital Bank it would still be accessible to me in my First Tennessee account since they took over Capital Bank). Thus, I guess you could consider this severance if you choose that method for purposes of accounting.

  Once again, the choice is yours and I wish all parties involved have a long, prosperous career that's benefited from the construction of the UPF. Take care and God bless you.

Sincerely,

James Epperson